## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN L. SMITH, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-2448 |
| | : | |
| PHILADELPHIA DEPARTMENT OF | : | |
| PRISONS, *et al.*, | : | |
| Defendants. | : | |

### MEMORANDUM

KENNEY, J.                                                    JULY 10, 2025

Plaintiff Kevin L. Smith, a pretrial detainee incarcerated at the Philadelphia Detention Center ("PDC"), initiated this civil rights action by filing a *pro se* Complaint asserting constitutional claims pursuant to 42 U.S.C. § 1983, as well as claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Smith also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Smith leave to proceed *in forma pauperis*. On statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court determines that some claims are plausible and can be served, but all other claims must be dismissed. Smith will be granted the option of proceeding only on the claims that are pled plausibly, or filing an amended complaint to attempt to cure the defects in the other claims dismissed without prejudice.

## I.    FACTUAL ALLEGATIONS[1]

---

[1] Smith used the form complaint available to unrepresented litigants to file his Complaint ("Compl.") and attached eight additional handwritten pages. (ECF No. 3.) The Court considers the entirety of the submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up. The Court may also consider

In his Complaint, Smith names the following Defendants: the Philadelphia Department of Prisons ("PDP"), the City of Philadelphia (the "City"), PDP Commissioner Michael R. Resnick, Former PDP Commissioner Blanche Carney, Deputy Commissioner Beauford, PDC Warden Robert Rose, Riverside Correctional Facility Warden and Former PDC Warden Pierre Lacombe,[2] PDC Social Workers Reimer and Pierce, Captain Cheeks, Major Segal, Major Harris, Sergeant Blair, Sergeant Johnson, Lieutenant Ruiz, Lieutenant Thomas, Sergeant Harris, and Former Grievance Officer Gingraw.[3]  (Compl. at 1-3, 12.)  Smith alleges his due process rights have been violated for a variety of reasons mainly associated with the conditions of his confinement and the grievance process at the PDC.[4]  (Id. at 7, 12-19.)  First, he claims that Defendants Captain Cheeks, Major Segal, Major Harris, PDC Warden Rose, Former PDC Warden Lacombe, Former Grievance Officer Gingraw, Sergeant Blair, Sergeant Johnson, Lieutenant Ruiz, Lieutenant Thomas, Sergeant Harris, Commissioner Resnick, and Former Commissioner Blanche Carney "all acted under the color of state and local law by refusing to modify prison policies and provide accommodations to ensure equal access to programs and

---

matters of public record when conducting a screening under § 1915.  See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

[2]  Smith provides different spellings for Defendant Lacombe's last name.  (See Compl. at 3.)  The Court may take judicial notice of the information published on a government website. See Vanderklok v. United States, 868 F.3d 189, 205 (3d Cir. 2017).  A review of the City's website reveals the proper spelling is Lacombe.  See https://www.phila.gov/2022-12-16-philadelphia-department-of-prisons-promotes-three-wardens/ (last accessed July 8, 2025).

[3]  Each individual defendant is named in his or her individual and official capacities. (Compl. at 2-3, 12.)

[4]  A review of public records reveals that Smith has pending criminal charges in the Philadelphia County Court of Common Pleas for murder and possession of a controlled substance with the intent to distribute, and he is represented by court-appointed counsel. Commonwealth v. Smith, CP-51-CR-0008364-2021 (C.P. Philadelphia).  The record shows that he has been confined at the PDC since July 23, 2021, and is awaiting trial.  (Id.)

services for people with disabilities."[5]  (*Id.* at 12.)  He claims he is a "spastic paraplegic" and has

not "gotten a chance to go to the yard (activities) for fresh air for forty-five months while [he is]

administrated to the hospital section of the [PDC]."  (*Id.*)  He further claims that "other prison

policies, privileges, activities, services, and programs [weren't] available to [him] because of a

lack of wheelchair accessibility."  (*Id.* at 13.)  Specifically, he alleges there is a "lack of

education services, religious services, work transition programs, [and] recreational facilities, no

outdoor recreation time, including no chance to exercise," and no "personal laundry services" for

the first three years of his incarceration.  (*Id.*)  He complains that the Prison Health Services

wing does not have "inmate representatives (black reps) under the unit management system that

can speak on [their] behalf at the regular monthly town hall meetings of unit staff and inmates."

(*Id.*)  He also complains about the lack of availability and ability to purchase commissary items

while being housed in the hospital unit.  (*Id.*)

     He next attacks the "lack of pure water" and hot water temperature at the PDC,

---

[5]  Smith appears to also allege claims on behalf of other inmates.  As a non-attorney proceeding *pro se*, Smith may not represent other inmates or raise claims on their behalf.  Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts.  Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so.  *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause.") (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).  Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court.  *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *see also Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim) (quotations omitted).  Accordingly, the Court will dismiss Smith's claims brought on behalf of others without prejudice, and those individuals may file suit if they wish to do so.  The Court expresses no opinion on the merits of any such lawsuit.

describing the jail as "already condemned as is" and bath facilities as "inadequate." (*Id*. at 12-13.) He alleges that the water he uses in his sink, to shower, and to drink is "not pure" and when he puts the water in "a cup to drink, there's clear but distinctive particles at the top of the cup of water." (*Id*. at 12.) He claims that he is unable to change the water temperature when he takes a shower, and "the water is hot and the pressure output of the water is strong." (*Id*.) Because he is a spastic paraplegic, his "leg shake[s] AGGRESSIVELY when the water touches [his] lower body, and the nurses don't help as well." (*Id*.) He also generally alleges a lack of sanitation and hygiene from "no power washing of cells" and having "inadequate clothing." (*Id*. at 15.)

Smith alleges an access to courts claim, maintaining the PDC does not have the appropriate legal books available and lacks "the fundamental right of court access that requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." (*Id*. at 14-15.) He claims he has not been given access to the law library in two years. (*Id*. at 15.) He also alleges that Defendants Reimer and Pierce "don't provide appropriate services" as social workers, claiming that they "won't let [him] use the phone to call banks to stop auto-payments" while he is incarcerated and to contact others to change his address. (*Id*. at 12.) Defendant Reimer also told Smith that he cannot come to the social workers' office because "it's not wheelchair accessible" and that he could get a job when there is one available, but he never got one. (*Id*. at 12-13.)

Smith lists several complaints related to his medical and nutritional care, alleging that the food is often not thoroughly cooked, contains salmonella, and is not nutritionally adequate, he has gained seventy pounds because he is "compelled to only eating bread" and does not get access to the food commissary. (*Id*. at 15.) He asserts that he was "allowed to order food

commissary due to medical reasons" for eleven months until Former Warden Lacombe became

the Warden. (*Id*. at 13.) As to his medical issues, he is not getting the proper physical therapy,

has bed sores because he is not being turned by the nurses while he sleeps, and surgeries related

to a baclofen pump causes him to itch, have tingling sensations, headaches and loss of

consciousness.[6] (*Id*. at 15.)

Smith next makes allegations about general safety conditions at the PDC concerning the

nonfunctioning emergency call button in his cell and emergency evacuation procedures. (*Id*. at

---

[6] It is unclear whether Smith intended to assert claims about his medical issues or merely provided them as background information to his other claims. Smith's complaints about his medical treatment, consisting mostly of fragmented sentences, do not allege plausible constitutional claims. He does not name any medical Defendants, nor did he allege facts indicating that particular prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

If Smith wishes to bring allegations of inadequate medical care, those claims would not be related to his case here and must proceed in a separate lawsuit. *See Thompson v. Ferguson*, 849 F. App'x 33, 36 (3d Cir. 2021) (*per curiam*) ("Misjoinder of claims occurs when, among other things, the events that give rise to the plaintiff's claims do not stem from the same transaction."); *see also Gorrio v. Terra*, No. 23-4366, 2023 WL 8373167, at *6 (E.D. Pa. Dec. 4, 2023) ("Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.") (quotation omitted); *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *15 (D.N.J. June 4, 2014) (Indeed, "[t]he courts[] . . . have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison, let alone multiple prisons.").

15-16.)  Specifically, he claims that on May 16 and 17, 2024, the hospital unit "started getting VERY smoky and had a real foul tar burning smell to the point of no return."  (*Id.* at 16.)  When the inmates asked about the smell, a correctional officer explained that the roof was being worked on.  (*Id.*)  They ultimately evacuated the unit, and it took forty-five minutes for the staff to evacuate everyone.  (*Id.*)  The inmates asked for masks, but none were available.  (*Id.*)  Smith and others were coughing from inhaling the smoke during the evacuation, and he began having a sore, itchy throat and chest pains.  (*Id.*)  Later that day, the supervisors, namely Defendants Warden Lacombe, Major Segal, and Lieutenant Thomas, and non-Defendant Sergeant Sam, sent the inmates back to their cells and did not let them get fresh air even though the unit still smelled like burnt tar and rubber.  (*Id.* at 17.)  The staff evacuated the unit the next day because the roof was on fire again.  (*Id.* at 16.)

Lastly, Smith asserts that he filed several grievances related to his claims.  (*Id.* at 7, 18.) He filed the grievances "electronically on a tablet," on paper, and "informally to most of the Defendants."  (*Id.* at 7.)  He claims he appealed some of the grievances, but the staff often "closed the grievances without [him] getting a chance to appeal it, or they didn't respond at all." (*Id.*)  Specifically, he lists that he filed grievances for: (1) his account statement balance, which was given to him; (2) exercise; (3) modifications to certain prison policies pursuant to the ADA and the RA, which was denied by Captain Cheeks; (4) shower hoses; (5) medical emergency related to his baclofen pump malfunctioning, which is being reviewed; (6) buying commissary food for medical purposes, which is being reviewed; and (7) rights to access the courts, which was closed without a chance to appeal.  (*Id.* at 18-20.)  He also filed a grievance for "hot food (street eats)," which was approved, *see id.* at 6-7, and for not being able to have a razor, which Defendant Captain Cheeks denied because "in the hospital unit, no razors are allowed."  (*Id.* at

13.)

As a result of these events, he alleges violations of the Eighth Amendment, the "First

Amendment—right to petition the government for a redress of grievances," the ADA, the RA,

and various Articles of the Pennsylvania Constitution[7] and Universal Declaration of Human

Rights.[8]  (*Id*. at 3, 12-13.)  He requests money damages.  (*Id*. at 17.)

## II.    STANDARD OF REVIEW

---

[7]  Any § 1983 claims brought under the Pennsylvania Constitution must be dismissed. "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution."  *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*).  As there is no private right of action for damages under the Pennsylvania Constitution, these claims are not plausible.  *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

[8]  Any claims brought under the Universal Declaration of Human Rights must also be dismissed.  As the United States Court of Appeals for the Third Circuit has recognized, "the Universal Declaration of Human Rights is a non-binding declaration that provides no private rights of action."  *See United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)) (explaining that the Universal Declaration of Human Rights is merely a resolution of the United Nations and "does not of its own force impose obligations as a matter of international law").  District courts throughout this Circuit have routinely dismissed claims brought under the Universal Declaration of Human Rights with prejudice for failure to state a claim or as legally frivolous.  *See, e.g.*, *Best v. S.C.I. Huntingdon*, No. 19-01599, 2019 WL 5866707, at *5 (M.D. Pa. Oct. 9, 2019), *report and recommendation adopted*, 2019 WL 5868259 (M.D. Pa. Nov. 8, 2019) (recommending dismissal of claims under the Universal Declaration of Human Rights for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) in a prisoner civil rights action); *Hamilton v. Dolce*, No. 18-2615, 2019 WL 4509375, at *3 (D.N.J. Sept. 19, 2019) (dismissing with prejudice *pro se* prisoner's claims for violations of the Universal Declaration of Human Rights); *Pavalone v. Pres. Mgmt. Inc.*, No. 18-191, 2019 WL 1117931, at *3 (M.D. Pa. Jan. 8, 2019), *report and recommendation adopted*, 2019 WL 1117919 (M.D. Pa. Mar. 11, 2019) (recommending dismissal of non-prisoners' claims for the "alleged violation[s] of their rights under the Universal Declaration of Human Rights . . . as legally frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)).

The Court grants Smith leave to proceed *in forma pauperis*.[9]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Smith is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the

---

[9]  Because Smith is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

### A.    § 1983 Claims

Smith brings constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court, as well as ADA and RA claims.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### 1.    Claims Against the PDP

The claims against the PDP cannot proceed as pled.  As the United States Court of Appeals for the Third Circuit has held, "the Philadelphia Prison System, [a] department[ ] of the City of Philadelphia itself, [is] not [a] proper defendant[ ]" in an action brought under § 1983. *Russell v. City of Philadelphia*, 428 Fed. App'x 174, 177 (3d Cir. 2011) (citing 53 Pa. Con. Stat. Ann. § 16257; *Bey v. City of Philadelphia*, 6 F. Supp. 2d 422, 423 (E.D. Pa. 1998)); *see also Durham v. Philadelphia Prison Sys.*, No. 18-2113, 2018 WL 3105589, at *2 (E.D. Pa. June 25,

2018) (explaining that the "Philadelphia Prison System is not an entity that is subject to suit separate from the City of Philadelphia.") (citing 53 Pa. Cons. Stat. Ann. § 16257).  Because the Philadelphia Prison System is not considered a "person" for purposes of § 1983, *Durham*, 2018 WL 3105589 at *2 (citing *Peele v. Philadelphia Prison Sys.*, No. 12-4877, 2015 WL 1579214, at *2 (E.D. Pa. April 8, 2015)), Smith's claims against it must be dismissed with prejudice.

### 2.    Conditions of Confinement

Although Smith cites to the Eighth Amendment in his Complaint, the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005); *see also Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.").  Prison officials have a constitutional duty to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.  *See Farmer*, 511 U.S. at 832-33 (internal quotation and citation omitted).  To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).  "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."  *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'"  *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir.

2012) (internal citations omitted), *abrogation on other grounds recognized by Fisher*, 115 F.4th 197; *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).  Courts should consider the totality of the circumstances in evaluating such a claim.  *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").  Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ."  *Stevenson*, 495 F.3d at 68 n.3.

### a.    Claims Involving Outdoor Exercise and Recreation

Smith claims he has not "gotten a chance to go to the yard (activities) for fresh air" (presumably a reference to time outside), for "forty-five months while [he is] administrated to the hospital section of the [PDC]."  (Compl. at 12.)  Specifically, he alleges there is "no outdoor recreation time, including no chance to exercise."  (*Id*. at 13.)  The United States Court of Appeals for the Third Circuit has acknowledged that when considering whether a deprivation of outdoor exercise amounts to a substantial deprivation, courts should consider the totality of the circumstances, including, but not limited to, the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation.  *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (citing *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)); *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983).  A temporary or short-term deprivation of access to exercise outdoors does not constitute the type of serious deprivation that amounts to objective punishment.  *See Walker v. Sorber*, No. 21-3477, 2022 WL 4586137, at *7 (E.D. Pa. Sept. 29, 2022).

Assuming for purposes of statutory screening that Smith has met the objective element of his claim based on the duration of the deprivation, his general allegation that he did not get to go outside to exercise or for recreation is too vague to support the subjective element of a plausible due process claim.  For instance, he does not provide any details about when and how he was denied the ability to exercise outdoors and which, if any, of the Defendants were responsible for the denial.  He also has not alleged sufficient facts from which the Court could infer that prison officials unlawfully intended to punish him by denying him exercise or that the conditions in which he was confined were excessive.[10]  Smith's failure to allege that he was unable to exercise in any other way and that he suffered any injury from restrictions on his ability to exercise outdoors is also fatal to his claim.  *See Abdullah v. Carney,* No. 19-5988, 2020 WL 3265143, at *3 (E.D. Pa. June 17, 2020) ("Abdullah's failure to allege any injury from restrictions on his ability to exercise outdoors is also fatal to his claim"); *see also Gittens v. Scholtz*, No. 18-2519, 2019 WL 3417091, at *10 (D.N.J. July 29, 2019) (concluding that prisoner's denial of exercise claim "fail[ed] because he did not allege that he suffered any harm from his inability to exercise outside of his cell").  Without additional facts, this claim fails as pled.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'") (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their

---

[10]  Smith specifically references the denial of outdoor exercise and activities while housed in the hospital section of the PDC.  (*See* Compl. at 12.)  Restrictions on Smith's outdoor exercise and recreation could presumably be inferred as a result of his stay in the hospital unit.  *See Bistrian*, 696 at 373 ("particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose") (internal citations omitted).

complaint must be dismissed."); *Taggart v. Owens*, No. 19-1089, 2020 WL 902920, at *3 (D.N.J. Feb. 25, 2020) ("For the Court to determine whether the totality of the circumstances under which Plaintiff was confined in the CCCF violated the Due Process Clause, Plaintiff needs to provide additional facts.")  Although a denial of outdoor exercise and recreation could amount to a constitutional violation, Smith has not provided enough factual allegations about the conditions to render this claim plausible.  However, he will be given an opportunity to file an amended complaint in order to "flesh out his allegations by . . . explaining in [the] amended complaint the 'who, what, where, when and why' of his claim."  *Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022) (citing *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)).

### b.     Claims Involving Education or Jobs

It is well settled that prisoners have no constitutional right to education services, rehabilitation, or jobs in prison.  *See, e.g., Abraham v. Delaware Dep't of Corr.*, 331 F. App'x 929, 931 (3d Cir. 2009) ("Prisoners have no constitutional right to rehabilitation, education, or jobs") (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001) (same); *Knight v. State of Ariz.*, 39 F.3d 1187 (9th Cir. 1994) ("Inmates have no constitutional right to education or rehabilitation."); *Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (*per curiam*) ("Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection.") (citing *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989)); *Fiore v. Holt*, 435 F. App'x 63, 68 (3d Cir. 2011) (*per curiam*) ("[P]risoners enjoy no protected interest in prison employment.").  Therefore,

Smith's claims regarding the lack of educations services,[11] "work transition programs," and a prison job (*see* Compl. at 12-13), will be dismissed.

### c.    Claims Involving Food

Smith alleges that the food at PDC is often not thoroughly cooked, contains salmonella, and is not nutritionally adequate.  (Compl. at 15.)  He claims he has gained seventy pounds because he is "compelled to only eating bread."  (*Id*.)  "Under the Eighth Amendment, which provides a floor for the rights of pretrial detainees, *see Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), inmates must be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being."  *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramons v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)); *see also Mora v. Camden Cnty.*, No. 09-4183, 2010 WL 2560680, at *8 (D.N.J. June 21, 2010)).  It has been held that "prison officials may violate the [Constitution] by serving unsanitary, spoiled or contaminated food if the prisoner also alleges that he or she suffered a distinct and palpable injury."  *See DeJesus v. Carey*, No. 15-2504, 2016 WL 6134540, at *3 (M.D. Pa. Oct. 20, 2016) (citation omitted).

Smith's only allegation related to the nutritional value of his food is that it is "inadequate" and lacks iron and vitamin C.  (Compl. at 15.)  This claim is wholly undeveloped

---

[11]  Smith also claims a lack of religious services without any additional facts.  (*See* Compl. at 13.)  A mere passing reference to a cause of action is insufficient to allege a plausible claim.  A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other."  *Campbell v. LVNV Finding, LLC, et al.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).  Smith may develop the alleged lack of religious services at the PDC with factual allegations if he chooses to file an amended complaint.

and conclusory.  He does not state how the food is nutritionally inadequate, and what harm, if any, he experienced as a result of this food.  Furthermore, the allegations that Smith has gained weight and that his grievance was approved for "hot food (street eats)" (*see* Compl. at 6-7), does not support these claims.  Accordingly, he has not stated a plausible constitutional claim based on the vague allegation that the food at the PDC is nutritionally inadequate.  His claim related to undercooked and contaminated food fares no better and fails to satisfy the objective requirement as plead.  "[I]solated instances of contaminated or spoiled food, while certainly unpleasant, are not unconstitutional."  *Duran*, 923 F. Supp. 2d at 720 ("Being served cold meals . . . is not 'punishment' under *Bell*.  So long as the food is nutritionally adequate, the mere fact that it is unvaried or cold does not give rise to a constitutional violation . . .") (citing *Nickles v. Taylor*, Nos. 09-313, 09-557, 09-952, 2010 WL 1949447, at *5 (D.N.J. May 14, 2010) ("A single or occasional incident involving spoiled food is insufficient to show that Plaintiff has been denied life's necessities").  He does not allege he was malnourished, that he or others became ill due to systemic problems with inadequate or spoiled food, or that a significant portion of his diet consisted of such food.

Smith also has failed to allege the subjective component related to these claims.  He has not offered any facts from which a court could reasonably infer deliberate indifference by anyone at the PDC with respect to food quality or his diet.  Finally, he has failed to allege that any named Defendant was personally involved in a violation of his rights with regard to this issue.  Thus, these claims are implausible as pled for these additional reasons.

### d.    Claims Involving Water

Smith alleges that the water he uses in his shower, sink, and to drink is "not pure" and when he puts the water in "a cup to drink, there's clear but distinctive particles at the top of the cup of water."  (Compl. at 12.)  Depriving an inmate of drinking water can state a plausible

claim.  *See Gibson v. Crouch*, No. 20-2021, 2022 WL 7352267, at *2-3 (3d Cir. Oct. 13, 2022) (*per curiam*); *see also Wolfe v. Christie*, No. 10-2083, 2013 WL 3223625, at *5 (D.N.J. June 25, 2013) ("[T]here is no doubt that potable water constitutes a basic human need."); but *compare Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 220, 228-29 (3d Cir. 2015) (holding that a complete lack of potable water for three days "other than the water in a toilet bowl . . . poses a clear substantial risk of serious harm to an inmate" and that inmate who did not have water in her cell and who was told to drink from the toilet bowl when she requested water stated a claim (quotations omitted)) *with Collier v. Adams*, 602 F. App'x 850, 853 (3d Cir. 2015) (*per curiam*) (holding that the deprivation of running water in cell for 77 hours was not sufficiently serious where plaintiff had access to "fluids such as milk each morning, and he never asked staff for water or fluids" and was constantly monitored); *see also Alpheaus v. Camden Cnty. Corr. Facility*, No. 17-0180, 2017 WL 2363001, at *14 (D.N.J. May 31, 2017) (concluding that plaintiff failed to state a claim based on his non-specific allegation of "no running water"); *Gardner v. Lanigan*, No. 137064, 2018 WL 4144689, at *4 (D.N.J. Aug. 30, 2018) ("While denial of access to drinking water can be an Eighth Amendment violation, here, it is not clear whether Plaintiff had access to alternative sources of water, nor how long water was denied to him.") (citation omitted).

Smith's allegations about water fail to satisfy the objective requirement as plead.  He does not allege how he was harmed by the water conditions or how he was deprived of a basic need in violation of the constitution.  For instance, he does not allege that he or others became ill due to the drinking water or that he was deprived of access to water.  The Complaint further fails to allege facts sufficient to meet the subjective component of the unconstitutional punishment

analysis from which one could infer that the PDC's supervisors or employees had reason to know that the water at the prison was "not pure," but opted to do nothing.

He next claims that he is unable to change the water temperature when he takes a shower, and "the water is hot and the pressure output of the water is strong" causing his legs to "shake AGGRESSIVELY" as a result of his paraplegia.  (Compl. at 12.)  Even assuming *arguendo* that this allegation could be liberally construed to rise to the level of a Fourteenth Amendment claim, Smith has not adequately developed the claim to satisfy the *Iqbal* pleading standard.  He has not alleged the personal involvement of any named Defendant nor offered any facts from which a court could reasonably infer deliberate indifference by anyone at the PDC with respect to the water temperature and pressure triggering spasms related to his paraplegia.

### e.    Claims Involving Sanitation, Hygiene, and Clothing

Smith generally alleges a lack of sanitation and hygiene, briefly mentioning "inadequate clothing," no "personal laundry services," and "no power washing" of his cell.  (Compl. at 13, 15.)  As it relates to inadequate clothing and "personal laundry services," the Court understands Smith to base his claim on not having clean clothes.  However, he has not alleged he was deprived of a basic need concerning his health or safety or how long the deprivation lasted.  *See Norman Briggs v. Sgt. Heidlebaugh, Deputy Shannon*, No. 96-3884, 1997 WL 318081, at *3 (E.D. Pa. May 22, 1997) ("A denial of clean clothes and towels also does not violate the Constitution if the deprivation was for a brief period of time."); *Veteto v. Miller*, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992) (finding no constitutional claim when inmate "claim[ed] he was denied meals, clean clothes, showers and recreation periods, but not that he went hungry or lived in an unsanitary, wholly sedentary environment" ).

His general and vague allegation that PDC lacks sanitation and hygiene is also not sufficient to allege a plausible claim.  Smith fail to allege he was harmed by these conditions,

and he provides no details about these unsanitary conditions, such as how long these conditions lasted. *See Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (concluding that whether the plaintiff suffered harm was critical to determination of whether unsanitary conditions were unconstitutional); *see also Thomas v. SCI Graterford*, No. 11-6799, 2014 WL 550555, at *4-5 (E.D. Pa. Feb. 12, 2014) (concluding that while the presence of insects in prison was uncomfortable, plaintiff had not "demonstrated an unconstitutional threat to his health and safety"). Without additional facts, the Court is unable to conclude that the alleged unsanitary conditions were sufficiently serious to constitute a cognizable claim. Accordingly, Smith's claims based on the unsanitary conditions of his confinement at the PDC will be dismissed without prejudice.

### f.    Claims Involving Wheelchair Accessibility

It is unclear if Smith intended to allege a lack of wheelchair accessibility claim under § 1983 because "prison policies, privileges, activities, services, and programs weren't available to [him] because of a lack of wheelchair accessibility." (Compl. at 13.) Although it appears this is intended as an ADA claim, which is analyzed in detail below, his conclusory allegations about a lack of wheelchair accessibility would fail because he sets forth no allegations that he suffered any constitutional injury from his not being able to access the activities, services or programs, or that any prison official knew he "face[d] a substantial risk of serious harm" from this issue yet "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847. However, he will be given an opportunity to amend his Complaint if he can cure these defects.

### g.    Claims Involving Commissary and Telephone Privileges

Lastly,[12] prisoners do not have a constitutional right to commissary privileges or

unlimited telephone use. *See, e.g., Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009)

(*per curiam*) (rejecting First Amendment claim based on telephone restrictions where "Almahdi

makes no assertion—and there is no evidence — that he lacked alternative means of

communicating with persons outside the prison") (citing *Valdez v. Rosenbaum*, 302 F.3d 1039,

1048 (9th Cir. 2002)); *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 606 (W.D.N.Y. 2015) (prisoners

have no constitutional right to access a commissary) (citing cases); *Randall v. Cnty. of Berks,

Pa.*, No. 14-5091, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) (explaining that "[a]

pretrial detainee's right to telephone access is subject to rational limitations in the face of

legitimate security interests of the penal institution") (internal quotations omitted); *Mitchell v.

City of New York,* No. 10-4121, 2011 WL 1899718, at *2 (S.D.N.Y. May 13, 2011) (dismissing

diabetic prisoner's claims related to items available at commissary "because there is no

constitutional right to access a prison commissary"); *Davis v. Shaw,* No. 08-36, 2009 WL

1490609, at *1 (S.D.N.Y. May 20, 2009) ("courts have declined to afford inmates a

constitutional right to the use of a prison commissary"); *Griffin v. Cleaver*, No. 03-1029, 2005

WL 1200532, at *6 (D. Conn. May 18, 2005) (as plaintiff had no constitutional right to telephone

---

[12]    The Court is unable to discern any constitutional violation arising from his issues with the broken emergency button in his cell, *see* Compl. at 15, evacuating his unit due to the roof fire, *see id.* at 16-17, and that the Prison Health Services wing does not have "inmate representatives (black reps) under the unit management system that can speak on our behalf at the regular monthly town hall meetings of unit staff and inmates," *id.* at 13, particularly since Smith fails to allege how he was deprived of a basic need in violation of the constitution or how he was harmed by these conditions. *See Gerholt v. Wetzel*, 858 F. App'x 32, 35 (3d Cir. 2021) (*per curiam*) ("The amended complaint, however, does not contain sufficient factual matter from which the Court may conclude that defendants were aware that the allegedly defective doors could expose Gerholt to 'an excessive risk' of harm and consciously disregarded that risk.").

use, social visits, and commissary privileges, therefore such sanctions do not support a claim for denial of due process). Accordingly, these claims will be dismissed with prejudice.

### 3.    First Amendment Access to Courts Claims

Smith alleges that PDC does not have the appropriate legal books available and lacks "the fundamental right of court access requiring prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." (Compl. at 14-15.) He claims he has not been given access to the law library in two years. (*Id*.) These allegations are best construed as a claim for denial of access to the courts under the First and Fourteenth Amendment. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. Furthermore, the right to access the courts may be satisfied if the pretrial detainee had an attorney "because appointment of counsel is sufficient to provide a pretrial detainee with 'meaningful access to courts.'" *Prater v. City of*

*Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*) (quoting *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Diaz,* 532 F. App'x at 63 (*per curiam*) (stating that an access-to-courts right "may be satisfied . . . by appointing [the plaintiff] an attorney").

Smith does not plausibly allege that the denial of access to the law library caused any actual injury, nor does he allege that any "nonfrivolous" or "arguable" claim or defense in his pending legal matters were lost because of his inability to access the law library.  Smith's vague and generalized allegations are not sufficient to state a plausible claim.  *See, e.g., Prater,* 542 F. App'x at 137 (affirming denial of access-to-courts claim where the pretrial detainee had "not offered any other explanation of how his inability to access the library affected his criminal proceedings"); *Diaz,* 532 F. App'x at 63 (affirming dismissal of access-to-courts claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action).

Moreover, Smith's claim is not plausible because the public docket for his pending criminal case reveals that he is represented by counsel in his pending criminal matter.  *See Smith*, CP-51-CR-0008364-2021.  Smith cannot, therefore, state a plausible claim for denial of access to courts since he is represented by counsel in his criminal case.  *See Prater*, 542 F. App'x at 137 n.4; *see also Diaz*, 532 F. App'x at 63; *Roman v. Union Cnty. Jail*, No. 16-1049, 2017 WL 498715, at *5 (D.N.J. Feb. 7, 2017) (denying access-to-courts claim for pretrial detainee to the extent the plaintiff was represented by counsel in his criminal proceedings); *Hurdle v. Dantos*, No. 20-5595, 2020 WL 6747293, at *6 (E.D. Pa. Nov. 17, 2020) (denying claim for access to legal research in part because the pretrial detainee was represented by counsel).  Accordingly, Smith's access-to-courts claim will be dismissed without prejudice.

### 4.    The City of Philadelphia and Official Capacity Claims

Smith asserts claims against the City and each of the individual Defendants, all of whom appear to be employees of the City.  Claims against City officials named in their official capacity are indistinguishable from the claims against the City.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Thus, a suit against the individual Defendants in his or her respective official capacity is duplicative of Smith's claims against the City and will be dismissed with prejudice.

Smith's claims against the City of Philadelphia also cannot proceed as pled.  To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell,* 436 U.S. at 694; *Natale*, 318 F.3d at 583-84.  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.* Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City.  *See Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability

22

under *Monell*.") (citing cases).  Also, if there is no underlying constitutional violation, *Monell*

liability cannot exist.  *See Bridges v. Scranton Sch. Dist.*, 644 F. App'x 172, 178 (3d Cir. 2016)

("Appellants cannot recover from the School District under Section 1983 for a failure to train

because there was no underlying constitutional violation.").

As the Court has determined that none of Smith's underlying claims are plausible as pled,

his claim against the City also fails.  *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227,

238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can

be no derivative municipal claim.")  (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a

municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the

municipality] could be liable")).  Moreover, Smith makes only vague, generalized, and

conclusory allegations that are entirely insufficient to support a *Monell* claim against the City.

He generally asserts that "prison policies" do not accommodate for his disability and "prison

policies, privileges, activities, services, and programs weren't available to [him] because lack of

wheelchair accessibility."  (Compl. at 12-13.)  Smith not only fails to identify the specific policy

or custom of the City he is referring to, but also fails to allege that he was injured due to that

policy or custom, both of which are additionally fatal to any *Monell* claim.  *See also Groman v.*

*Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy

or custom, without more, are not sufficient to state a claim under *Monell*).  Accordingly, his

claims against the City are not plausible as pled and will be dismissed.

### 5. Claims Against Supervisory Officials

Even had Smith successful alleged an underlying constitutional violation, which he has

not, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an

office or facility are insufficient to allege personal involvement in that violation.  *See Saisi v.*

*Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'") (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga,* 806 F.3d at 227; *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*).

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227. Because Smith has not alleged that any supervisory official was personally involved in a denial of his constitutional rights or established a policy with deliberate indifference to his rights, the claims against them are dismissed.

### 6.    Claims Based on Grievances

Finally, to the extent Smith attempted to assert a stand-alone claim against any of the

individual Defendants based on the grievance process, it will be dismissed because "prisoners do

not have a constitutional right to prison grievance procedures." *Gerholt*, 858 F. App'x at 34 (*per*

*curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d

728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, allegations such as those raised by Smith

predicated on failures of the grievance process or improper handling of or response to grievances

do not give rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400,

403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has

no free-standing constitutional right to an effective grievance process, Woods cannot maintain a

constitutional claim against Lucas based upon his perception that she ignored and/or failed to

properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F.

App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a

constitutionally protected right to the prison grievance process" and that "a state grievance

procedure does not confer any substantive constitutional right upon prison inmates" (internal

quotations and citations omitted)).

Furthermore, a prison official's involvement in the grievance process is not sufficient to

allege liability under § 1983 for the events that gave rise to the grievance.  *See Curtis v. Wetzel*,

763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that

Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of

Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *see*

*also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some

of these defendants were apparently involved in responding to some of Folk's prison grievances,

there are no allegations linking them to the underlying incidents and thus no basis for liability

based on those later grievance reviews.").  All claims based on the handling of grievances will be dismissed with prejudice.

### B.    ADA and RA Claims

Smith names several of the individual Defendants in his ADA and RA claims.  (*See* Compl. at 12.)  As an initial matter, Title II of the ADA does not provide for individual liability. *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim.").  The proper defendant under a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity, which here would be the City.[13]  *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002).  Accordingly, Smith's ADA claims against the individual Defendants must be dismissed with prejudice.

Title II of the ADA and the RA require public entities to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities.  *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019); *see also Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting the phrase "services, programs, or activities" in Title II of the ADA includes recreational, medical, educational, and vocational prison programs); *Smith v.*

---

[13]  Smith does not specifically name the City in these claims.  Liberally construing the Complaint, the Court infers the City as a named Defendant in his ADA and RA claims for purposes of screening these claims.

*Harris Cnty., Texas*, 956 F.3d 311, 317 (5th Cir. 2020) ("The ADA defines public entities to include local governments and their instrumentalities, 42 U.S.C. § 12131(1)(A)-(B), such as county jails" (citing *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) ("The Supreme Court has held that prisons are public entities that may not exclude disabled individuals from participation in or deny them the benefits of their services, programs, or activities.")))‌.

"[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, *i.e.*, the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (internal quotations, citations, and alterations omitted).[14]

In order to state a claim for relief under the ADA, a plaintiff must plead facts which would show that he is a qualified individual with a disability, that he was denied the benefits of a program or activity of a public entity, and that the exclusion from those benefits occurred by reason of his disability. *See, e.g., Calloway v. Boro of Glassboro Dep't of Pol.*, 89 F. Supp. 2d 543, 551 (D.N.J. 2000); *see also Ali v. Governor of Del.*, 777 F. App'x 584, 588-89 (3d Cir. 2019). Monetary damages, such as those sought by Smith, are not available under the ADA

---

[14] Although the substantive standards for determining liability under the RA and the ADA are the same, *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014), a party who seeks to proceed under § 504 "must show that the allegedly discriminating entity receives federal funding." *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013)); *see also* 29 U.S.C. § 794(a). Therefore, the RA claims against the individual Defendants will also be dismissed because the proper Defendant is the entity receiving federal assistance, which is the City here. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals").

absent a showing of intentional discrimination. *See Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) ("To prove intentional discrimination, an ADA claimant must prove at least deliberate indifference, and to plead deliberate indifference, a claimant must allege (1) knowledge that a federally protected right is substantially likely to be violated and (2) failure to act despite that knowledge.")  The facts alleged in the Complaint support a reasonable inference that Smith was "precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of [his] disability"—Smith's paraplegia, and the Court is prepared to direct service on this claim. *See Furgess,* 933 F.3d at 288-89; 42 U.S.C. § 12132; 29 U.S.C. § 794(a).[15]

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Smith leave to proceed *in forma pauperis*. All claims against the PDP, all official capacity claims, all claims brought under the Pennsylvania Constitution and the Universal Declaration of Human Rights, any claim based on medical treatment under the ADA, and any claim based on grievances will be dismissed with prejudice.  The condition of confinement claims regarding education services, work transition programs, a prison job, access to the commissary, and telephone privileges will also be dismissed with prejudice.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002)

---

[15]  The Court understands this claim to be limited to programs, services and activities that do not include medical services.  Medical treatment decisions do not provide a basis for a plausible claim under the ADA and would fail if Smith intended to make such a claim.  *Nunez v. Prime Care Health, Inc.*, No. 19-0859, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) ("decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA") (citing cases); *see also Kokinda*, 663 F. App'x at 159 ("The District Court was also correct to conclude . . . that Kokinda's ADA claims fail because the ADA prohibits disability-based discrimination, not inadequate treatment for the disability.") (footnotes and internal quotations omitted).

(stating that complaints dismissed under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile").  His remaining claims are dismissed without prejudice.

The Court is prepared to direct service of the Complaint on Smith's ADA and RA claims against the City.  However, the Court will first give Smith an opportunity to file an amended complaint in the event he seeks to amend his claims dismissed without prejudice, except for any § 1983 claims related to inadequate medical care, which must be brought in a separate lawsuit,[16] or any claims brought on behalf of others.  Smith may **NOT** reassert any claim dismissed with prejudice.  If he chooses not to file an amended complaint, the Court will direct service on the City for only the ADA and RA claims.

An appropriate Order follows, which provides further information about options for proceeding in this case.

**BY THE COURT:**

**/s/ Chad F. Kenney**
_____
**CHAD F. KENNEY, J.**

---

[16]  The Court expresses no opinion on the merits of any such lawsuit.